ORIGINAL

FILED
U.S. DISTRICT COURT

2008 MAR 27 PM 12:28

CLERK C Adams
SO. DIST. OF GA.

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

DUBLIN DIVISION

| | | |
|---|---|---|
| AMMON RA SUMRALL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV 307-064 |
| | ) | |
| ANTHONY WASHINGTON, Warden, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, an inmate at Macon State Prison ("MSP") in Oglethorpe, Georgia, has submitted to the Court for filing a complaint brought pursuant to 42 U.S.C. § 1983.[1] Because Plaintiff's complaint was filed *in forma pauperis*, it must be screened to protect potential defendants. Phillips v. Mashburn, 746 F.2d 782, 785 (11th Cir. 1984). Pleadings drafted by *pro se* litigants must be liberally construed, Haines v. Kerner, 404 U.S. 519, 520-21 (1972) (*per curiam*), but the Court may dismiss a complaint, or any part thereof, that is frivolous or malicious or that fails to state a claim upon which relief may be granted. 28 U.S.C. §§ 1915(e) & 1915A.[2]

---

[1] The events comprising the above-captioned complaint occurred while Plaintiff was incarcerated at Johnson State Prison ("JSP").

[2] Under 28 U.S.C. § 1915(b)(4), a prisoner cannot be prohibited from bringing a civil action because he has no means by which to pay an initial fee; thus, the Court will proceed to screen Plaintiff's complaint even though he is unable to pay a partial filing fee. However,

## I. SCREENING THE COMPLAINT

*Liberally* construing Plaintiff's complaint, the Court finds the following. Plaintiff names the following Defendants: (1) Anthony Washington, Warden of JSP, (2) Ronnie Lawrence, Deputy Warden of JSP, (3) Willis Linder, Sergeant at JSP, and (4) Jane Doe, Hearing Officer at JSP. (Doc. no. 1, pp. 1, 3). Plaintiff contends that these Defendants violated his constitutional rights by retaliating against him because he filed grievances regarding the conditions at JSP. (Id. at 4-10).

According to Plaintiff, on February 7, 2007, he requested protective custody because he did not feel safe in the general population at JSP. (Id. at 5). As per an officer's request, Plaintiff wrote a statement explaining his reasons for requesting protective custody. (Id.). In his statement Plaintiff explained that while incarcerated at a different prison he had been "brutally assaulted" by prison gang members. (Id. at 4). The statement also included that on February 7th, while at the JSP law library, Plaintiff was approached by a prisoner who informed Plaintiff that the prisoner had heard that Plaintiff had been "jumped by gangsters at [Georgia State Prison]." (Id.). Moreover, this prisoner stated that other prisoners at JSP, who were also apparently members of the same gang as those who assaulted Plaintiff, were also familiar with the "incident" and were going to "get Plaintiff." (Id.). Plaintiff was placed in protective custody. (Id.).

---

in accordance with the terms of the Consent to Collection of Fees form which Plaintiff signed, he remains liable for the full $350.00 filing fee.

The issues in the above-captioned complaint arise from events occurring once Plaintiff was placed in protective custody. Initially, Plaintiff alleges that even though he was in protective custody, not isolation, he was not allowed his personal property. (Id.). Plaintiff contends this procedure was contrary to the standard operating procedure. (Id.). Plaintiff, maintains that after he unsuccessfully attempted to address this situation with officers at JSP he filed a grievance. (Id. at 5, 6). In addition, Plaintiff also filed a grievance pertaining to his complaint that the lights were left on twenty-four hours a day in the protective custody cells. (Id. at 6).

Plaintiff further alleges that instead of processing the grievances, the chief counselor gave them to Defendants Washington and Lawrence. (Id.). Thereafter, during a routine morning inspection, an exchange about Plaintiff's grievances took place between Plaintiff and Defendant Lawrence.[3] Defendant Lawrence allegedly stated, "If you don't like it in here, come off [protective custody]. We're not gonna change how we run this prison for you and nobody else. And since you want to write us up, we'll write you up." (Id. at 7). Plaintiff asserts that Defendant Lawrence instructed Defendant Linder to write Plaintiff a disciplinary report for refusing to sign off protective custody. (Id.). Plaintiff explains that up until he filed the grievances, Defendants Lawrence and Washington had been very cordial to Plaintiff. (Id.).

On February 17, 2007, Plaintiff received a copy of his disciplinary report work sheet authored by Defendant Linder, and the sheet provided:

---

[3]Both Defendants Lawrence and Linder participated in the morning inspection. (Doc. no. 1, p. 6).

3

> [Plaintiff] was instructed by [Defendant Lawrence], that he needed to come off [protective custody] status because his reason for being on protective custody was not valid. [Plaintiff] didn't list who he was afraid of on his witness statement. [Plaintiff] refused the instruction given to him.

(Id.). The disciplinary hearing for the above alleged infraction occurred on February 21, 2007. (Id. at 8). At that hearing, Plaintiff explained that he did not know the names of the people who were out to "get him," and therefore he could not list their names on his statement. (Id.). Moreover, Plaintiff allegedly explained that the standard operating procedures regarding administrative segregation do not require an inmate to provide the names of "enemies" who might hurt him in order to receive protective custody. (Id.).

Plaintiff next contends that Defendant Doe, the disciplinary hearing officer, stated, "They want you guilty so I'm not gonna go against my boss, no matter what that [standard operating procedure] says." (Id.). Plaintiff continued the process of exhausting his administrative remedies. (Id.).

Plaintiff claims that the above mentioned disciplinary report was altered sometime after he filed his appeal. (Id.). According to Plaintiff, the disciplinary report now provided that Plaintiff's reason for requesting protective custody was invalid not because he failed to provide who he was afraid of, but because he did not list why he was afraid. (Id.). Plaintiff appealed the disciplinary report conviction, and he filed grievances that alleged retaliation by JSP personnel for his filing of grievances regarding the conditions at JSP. (Id.).

On March 15, 2007, Plaintiff was transferred to Telfair State Prison, where he learned that his classification had been raised from medium to close security. (Id. at 9). It appears his classification was raised while he was still at JSP because he threatened the staff. (Id.).

4

Plaintiff adamantly denies ever threatening the staff at JSP and contributes the elevation of his security level to retaliation by Defendants because he filed grievances and otherwise complained about the conditions at JSP. (Id. at 10).

## II. DISCUSSION

### A. Procedures and Grievance Claims

To the extent Plaintiff alleges that his constitutional rights were violated because his grievances were mishandled or otherwise processed in a manner that did not comply with JSP grievance procedures, his claim must fail. "Procedural requirements alone do not create a substantive liberty interest, and mere violation of such procedures is not a constitutional violation." Rienholtz v. Campbell, 64 F. Supp.2d 721, 731 (W.D. Tenn. 1999), *aff'd*, 198 F.3d 247 (6th Cir. 1999) (Table); see also Massey v. Helman, 259 F.3d 641, 647 (7th Cir. 2001) ("[T]he existence of a prison grievance procedure confers no liberty interest on a prisoner. . . . A state-created prison grievance procedure is simply a procedural right and does not confer any substantive right upon an inmate."); Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994) ("[T]he Constitution creates no entitlement to grievance procedures or access to any such procedure voluntarily established by a state."); Ouzts v. Cummins, 825 F.2d 1276, 1278 (8th Cir. 1987) (failure to respond to grievance does not constitute a due process violation); Azeez v. DeRobertis, 568 F. Supp. 8, 10 (N.D. Ill. 1982) (failure to process plaintiff's grievances is not actionable under § 1983).

The Eleventh Circuit's decision in Wildberger v. Bracknell, 869 F.2d 1467 (11th Cir. 1989) (*per curiam*) is instructive on this point. In that case, the plaintiff alleged numerous claims, including a violation of "the grievance procedures established by the State

5

Department of Corrections." Id. at 1467. Addressing the plaintiff's claims, the magistrate judge determined that the "violation of the grievance procedure did not rise to the level of a constitutional violation, since there was no entitlement to a grievance procedure under the Federal Constitution." Id. In the end, the magistrate judge determined that none of the plaintiff's claims had merit. Id. at 1468. Although the Eleventh Circuit found error with the trial court's analysis of one of the plaintiff's retaliation claims, it found no error with the trial court's adoption of the magistrate judge's recommendation regarding the plaintiff's grievance claim. Id.

In this case, Plaintiff merely states that instead of processing his grievances, the chief counselor gave them to Defendants Washington and Lawrence. However, alleged misdeeds regarding grievance procedures do not give rise to stand-alone claims under § 1983. Buckley v. Barlow, 997 F.2d 494, 495 (8th Cir. 1993) (*per curiam*). "There is no right to a particular type of process in the handling of prison grievances. . . . [F]ederal courts simply do not sit as the ultimate appellate tribunal for prison grievance procedures." Rienholtz, 64 F. Supp.2d at 731. Furthermore, mere violations of *procedures* contained in the Handbook do not implicate Plaintiff's federal constitutional rights. See Wildberger, 869 F.2d at 1467-68; Rienholtz, 64 F. Supp.2d at 731. Therefore, Plaintiff's claims regarding an alleged violation of the grievance procedures fails as a matter of law.

## B.     No Liability Based on *Respondeat Superior*

Plaintiff alleges that Defendants, collectively, retaliated against him for filing grievances and otherwise complaining about the conditions at JSP. (Doc. no. 1, p. 10). However, the only mention of Defendant Washington in Plaintiff's complaint is that instead

of processing the grievances Plaintiff had filed, the chief counselor gave them to Defendants Washington and Lawrence.[4] (Id. at 6). Nowhere does Plaintiff allege that Defendant Washington participated in any of the alleged retaliation described in Plaintiff's complaint. Defendant Washington cannot be held liable simply by virtue of his supervisory position at JSP.

In the Eleventh Circuit, "supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of *respondeat superior* or vicarious liability." Hartley v. Parnell, 193 F.3d 1263, 1269 (11th Cir. 1999) (internal quotation marks and citation omitted); see also Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691 & 694 n.58 (1978). To hold an official in a supervisory position liable, Plaintiff must demonstrate that either (1) the supervisor personally participated in the alleged constitutional violation, or (2) there is a causal connection between actions of the supervising official and the alleged constitutional violation. Hartley, 193 F.3d at 1269 (citing Brown v. Crawford, 906 F.2d 667, 671 (11th Cir. 1990)). Plaintiff has not alleged that Defendant Washington was personally involved in the events comprising Plaintiff's retaliation claim.

Similarly, Plaintiff fails to allege a "causal connection" between Defendant Washington and the asserted constitutional violations. See Zatler v. Wainwright, 802 F.2d 397, 401 (11th Cir. 1986) (*per curiam*) (requiring an affirmative causal connection between a defendant and an alleged constitutional violation). The "causal connection" can be

---

[4]As explained in Part A, *supra*, Plaintiff fails to state a claim based on allegedly mishandled grievances.

established "when a history of widespread abuse[5] puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so," Brown, 906 F.2d at 671, or when "the supervisor's improper 'custom or policy . . . result[s] in deliberate indifference to constitutional rights.'" Hartley, 193 F.3d at 1269 (quoting Rivas v. Freeman, 940 F.2d 1491, 1495 (11th Cir. 1991)). A causal connection may also be shown when the facts support "an inference that the supervisor [or employer] directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so." Cottone v. Jenne, 326 F.3d 1352, 1360 (11th Cir. 2003). Plaintiff's allegation of retaliation by Defendants Lawrence, Linder, and Doe, regarding Plaintiff's grievances, does not show there was a history of widespread abuse that put Defendant Washington on notice of the need for corrective action or that he had an improper custom or policy that violated any of Plaintiff's constitutional rights. Thus, Plaintiff failed to state a claim against Defendant Washington based on his status as Warden of JSP.

### III. CONCLUSION

As Plaintiff failed to state a claim for violation of the JSP grievance procedure, as well as against Defendant Washington based on his status as Warden of JSP, the Court **REPORTS** and **RECOMMENDS** that Plaintiff's grievance procedure claim and Defendant

---

[5] The standard for demonstrating "widespread abuse" is high. In the Eleventh Circuit, "deprivations that constitute widespread abuse sufficient to notify the supervising official must be <u>obvious, flagrant, rampant and of continued duration</u>, rather than isolated occurrences." Brown, 906 F.2d at 671 (emphasis added).

Washington be **DISMISSED** from this case.[6]

SO REPORTED and RECOMMENDED this 27th day of March, 2008, at Augusta, Georgia.

W. LEON BARFIELD
UNITED STATES MAGISTRATE JUDGE

---

[6]By separate Order, the Court has directed that service of process be effected on Defendants Lawrence, Linder, and Doe on Plaintiff's retaliation claim.