ORIGINAL

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

DUBLIN DIVISION

| | | |
|---|---|---|
| AMMON RA SUMRALL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV 307-064 |
| | ) | |
| RONNIE LAWRENCE, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, an inmate currently incarcerated at Autry State Prison, in Pelham, Georgia, commenced this civil action pursuant to 42 U.S.C. § 1983. Plaintiff is *pro se* and is proceeding *in forma pauperis*. This matter comes before the Court on Defendants' motion for summary judgment. (Doc. no. 50). Plaintiff opposes Defendants' motion. (Doc. nos. 54, 55). For the reasons stated below, the Court **REPORTS** and **RECOMMENDS** that Defendants' motion for summary judgment be **GRANTED IN PART** and **DENIED IN PART**, that a final judgment be **ENTERED** in favor of Defendants Lawrence, Linder and Soles, and that Plaintiff's claim of retaliation against Defendant Shepard proceed to trial.

I. **FACTS**

Plaintiff was incarcerated at Johnson State Prison ("JSP") when the events forming the basis of this case occurred. Plaintiff was housed at JSP from January 25, 2007, until March 15, 2007. (Doc. no. 50, Lawrence Aff. ¶ 3, Ex. A). Prior to his transfer to JSP,

Plaintiff was housed at Georgia State Prison ("GSP"). According to Plaintiff, on August 2, 2005, while at GSP, he was brutally assaulted by two gang members. (Doc. no. 54, p. 2; doc. no. 55, Pl.'s Aff. ¶ 3). On February 7, 2007, while at JSP, Plaintiff states that a prisoner told him that a number of gang members from the same gang as the prisoners who assaulted Plaintiff at GSP, were at JSP and planned "to get" Plaintiff. (Doc. no. 54, p. 3; Pl.'s Aff. ¶ 3). As such, on that same day, Plaintiff spoke to the "shift supervisor" and requested protective custody to protect him from the gang members.[1] (Doc. no. 54, Pl.'s Aff. ¶ 4). Inmates housed at JSP may request protective custody if they feel that their safety is threatened by another inmate. (Doc. no. 50, p. 2). Therefore, the shift supervisor granted Plaintiff's request, and Plaintiff was assigned to the administrative segregation unit on February 8, 2007. (Doc. no. 50, p. 3 and Lawrence Aff. ¶ 7, Exs. B-C; doc. no. 54, p. 3; Pl.'s Aff. ¶ 4).

The rules and regulations regarding protective custody for all Georgia Department of Corrections ("GDOC") facilities, including JSP, are set forth in Standard Operating Procedure ("SOP") IIB09-0001, Administrative Segregation, Section VI, ¶ A. (Doc. no. 50, p. 2 and Lawrence Aff. ¶ 4). SOP IIB09-0001 (VI)(A) provides that an inmate should submit in writing his request to be placed in protective custody. It also provides, "The request must explain why the inmate/probationer needs protective custody, and it should list who the inmate/probationer needs protective custody from, and it should list who the inmate/probationer thinks might hurt him/her, if known." Id. at 1. However, once an inmate requests protective custody, an investigation will be conducted to determine whether the

---

[1] Plaintiff did not know the identity of the gang members. (Doc. no. 54, p. 3).

request should be granted, and the investigation will include an interview with the requesting inmate. Id.

Pursuant to the SOP, once Plaintiff made his request to be assigned to protective custody, Defendant Lawrence, the Deputy Warden of Security, reviewed the request. (Doc. no. 50, Lawrence Aff. ¶ 8). Plaintiff's written request provided that he sought protective custody because, "I am trying to avoid any type of trouble that will result in me being sent back to [GSP]." (Id., Lawrence Aff. Ex. C). Defendant Lawrence concluded that Plaintiff's stated reason for seeking protective custody did not set forth enough detail to justify his continued assignment in protective custody. (Id., Lawrence Aff. ¶ 8). Therefore, Defendants maintain that during the morning inspection on February 16, 2007, Defendant Lawrence instructed Plaintiff to provide an additional statement with more information regarding his need to stay in protective custody. (Id., Lawrence Aff. ¶ 8 and Linder Aff. ¶ 4). Defendants further maintain that Plaintiff refused to provide an additional statement or any additional information regarding his need to remain assigned to protective custody. (Id., Lawrence Aff. ¶ 8 and Linder Aff. ¶ 4). As a result of Plaintiff's failure to provide the necessary information, Defendant Lawrence was unable to complete the investigative process to accurately determine whether Plaintiff's continued stay in protective custody was warranted. (Id., Lawrence Aff. ¶ 8 and Linder Aff. ¶ 4).

Because Plaintiff refused to provide an additional statement, Defendant Lawrence instructed Defendant Linder to write a disciplinary report ("DR") on Plaintiff for his failure to follow instructions. (Id., Lawrence Aff. ¶ 9 and Linder Aff. ¶ 4). On February 16, 2007, Defendant Linder wrote DR No. 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 on Plaintiff for his failure to follow Defendant

3

Lawrence's instructions and refusing to cooperate with the investigation. (Id., Lawrence Aff. ¶ 9 and Linder Aff. ¶ 4). The DR provided:

> On the above date and time[, Plaintiff] was instructed by [Defendant] Lawrence [Deputy Warden of Security] that he needed to come off of [protective custody] status because his reasons for being on [protective custody were] not valid. He didn't list why he was afraid [] on his witness statement. [Plaintiff] refused the instruction given to him.

(Id., Soles Aff. Ex. A). The DR further provided, "Based on [Plaintiff's] refusal to cooperate with [the] investigation[,] I recommend a hearing." (Id.).

Plaintiff disagrees with Defendants' version of the events surrounding his request for protective custody and the DR. Plaintiff alleges that when he was assigned to protective custody, he was not allowed access to his personal property. (Doc. no. 54, pp. 2-3, 4-6). Plaintiff contends this denial of property was contrary to the standard operating procedure. (Id.). Plaintiff maintains that after he unsuccessfully attempted to address this situation with officers at JSP, he filed a grievance. (Id.). In addition, Plaintiff also filed a grievance pertaining to his complaint that the lights were left on twenty-four hours per day in the protective custody cells.[2] (Id.).

Plaintiff then claims that during morning inspection on February 16, 2007, he and Defendant Lawrence had an exchange about Plaintiff's grievances. (Id.). Plaintiff claims that Defendant Lawrence approached Plaintiff's cell and made a reference to the grievances Plaintiff had filed, and he told Plaintiff to "come off" protective custody since Plaintiff did not like it in protective custody. (Id.). Plaintiff asserts that Defendant Lawrence instructed

---

[2]The Court will refer to Plaintiff's complaints concerning his lack of access to his personal property and the lights being left on twenty-four hours per day, as Plaintiff's complaints concerning his conditions of confinement.

4

Defendant Linder to write Plaintiff a DR for refusing to come off of protective custody. (Id.).

Next, Plaintiff maintains that Defendants' stated reason for the DR – that he failed to provide additional information and thus refused to follow Defendant Lawrence's instructions – is false. Plaintiff asserts that the DR establishes that the reason he was given the DR was because he refused to come off of protective custody status. (Doc. no. 54, p. 5). Additionally, Plaintiff contends that at the disciplinary hearing, Defendant Soles, the disciplinary hearing officer, stated, "They want you guilty so I'm not gonna go against my boss, no matter what that [standard operating procedure] says." (Doc. no. 54, p. 5; Pl.'s Aff. ¶ 11). Defendant Soles then sanctioned Plaintiff with seven days in isolation and thirty days of both phone and store restriction. (Doc. no. 50, Linder Aff. Ex. A).

Notably, Defendants Lawrence and Linder state that Plaintiff and Defendant Lawrence did not discuss any grievances that Plaintiff may have filed and/or any written complaints Plaintiff may have made regarding the conditions of confinement at JSP. (Doc. no. 50, Lawrence Aff. ¶ 12, Linder Aff. ¶ 6, Soles Aff. ¶ 9). Additionally, as the Deputy Warden of Security, Defendant Lawrence is not routinely involved in either the formal or informal grievance process at JSP. As such, Defendant Lawrence was not aware, prior to February 16, 2007, that Plaintiff had filed any grievances – informal or formal – while at JSP. (Doc. no. 50, Lawrence Aff. ¶ 10).

Furthermore, Defendants provide that at no time prior to issuing DR No. 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 did Defendants Lawrence[3] and Linder discuss any grievance and/or oral or written

---

[3]Defendant Lawrence also does not specifically recall if he received any letters from Plaintiff regarding the conditions in protective custody. (Doc. no. 50, Lawrence Aff. ¶ 11).

5

complaints that Plaintiff may have made, concerning the conditions of confinement at JSP. (Id., Lawrence Aff. ¶ 10, Linder Aff. ¶ 5, Soles Aff. ¶ 7). In fact, the record establishes that Plaintiff did not file his first informal grievance until after the disciplinary hearing had concluded.[4] (Id., Morgan Aff. ¶ 7).

On February 21, 2007, Defendant Soles served as the hearing officer for DR No. 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.[5] Defendant Soles states that she conducted the hearing according to SOP IIB02-0001 and found Plaintiff guilty of failure to follow instructions. (Id., Soles Aff. ¶ 4). Defendant Soles did not have any discussion with Defendants Lawrence or Linder concerning DR No. 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 prior to the hearing. (Id. ¶ 12). Nor did Defendants Lawrence, Linder, or anyone else, instruct her or suggest that she deviate from SOP IIB02-0001, or that she should find Plaintiff guilty because he had filed grievances or complained of the conditions of confinement at JSP. (Id.). Defendants acknowledge that Plaintiff's appeal of DR No. 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 was upheld. (Id., ¶ 6 and Ex. C). However, Defendants assert that the GDOC Office of Investigations and Compliance of Inmate Affairs and Appeals Unit ("Office of Investigations") upheld Plaintiff's appeal because the Inmate's Rights Statement was not included in the disciplinary packet. (Id.). Defendants maintain that

---

[4]Plaintiff's grievance history as JSP provides that he filed an informal grievance on March 1, 2007, wherein he complained that Defendant Lawrence retaliated against him by writing a DR on him. On March 22, 2007, Plaintiff submitted the formal grievance addressing this same claim, Grievance No. 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. (Doc. no. 50, Morgan Aff. ¶ 7). Plaintiff filed a second informal grievance on March 9, 2007, wherein he complained that the JSP staff was denying property to inmates in protective custody. (Id.). Plaintiff then filed a formal grievance, Grievance No. 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 addressing this issue, on March 22, 2007. (Id.).

[5]The disciplinary process at all GDOC facilities is governed by SOP IIB02-0001. This SOP sets forth the procedures that a hearing officer must follow when conducting a disciplinary hearing. (Doc. no. 50, Soles Aff. ¶ 3, Ex. A).

Plaintiff's Inmate's Rights Statement was included in DR No. 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, and that Defendant Soles would not have conducted the disciplinary hearing if the Inmates Right's Statement had not been included. (Id.). Defendant Soles also maintains that she is not responsible for, nor did she participate in, forwarding DRs to the Office of Investigations. (Id.). Defendant Soles states that prior to receiving a copy of this lawsuit, she was unaware that Plaintiff had filed grievances or complained of the conditions of confinement while he was housed at JSP. (Id. ¶ 7).

Next, Defendant Shepard provides that in March 2007, he personally read a handwritten letter with the signature "Ammon Ra-Sumrall," in which Plaintiff had written that he had "declared war" on the staff at JSP. (Id., Shepard Aff. ¶ 3). Based on Plaintiff's "declaration of war," and the potential threat that he posed to the JSP staff, Defendant Shepard, on March 8, 2007, requested that Plaintiff be transferred to another institution. (Id., Shepard Aff. ¶ 3, Ex. A). Defendant Shepard did not have authority to transfer Plaintiff from JSP; rather, his authority was limited to requesting a transfer. (Id. ¶ 5). The GDOC Office of Inmate Classification in Atlanta ("Office of Inmate Classification") is responsible for reviewing and approving transfer requests. (Id. ¶ 4). The Office of Inmate Classification approved Defendant Shepard's request, and Plaintiff was transferred to Telfair State Prison ("TSP") on March 15, 2007. (Id. ¶ 4). Defendant Shepard did not request Plaintiff be transferred because of grievances he had filed; rather, he requested the transfer only on the basis of Plaintiff's "declaration of war." (Id. ¶ 5, Ex. A).

Plaintiff, on the other hand, argues that Defendant Shepard transferred Plaintiff to Telfair State Prison ("TSP") and raised his security level in retaliation for Plaintiff filing

grievances. (Doc. no. 54, p. 6; doc. no. 55, Pl.'s Aff. 16). Plaintiff contends that Defendant Shepard, as the Deputy Warden of Care and Treatment, was responsible for reviewing informal grievances. (Doc. no. 54, p. 6). Plaintiff claims that although Defendant Shepard was responsible for reviewing informal grievances, he failed to review Plaintiff's, and therefore, Plaintiff was required to refile the grievances. (Id.). Notably, Plaintiff does not provide the date or the numbers of the informal grievances he claims to have filed but were not reviewed by Defendant Shepard. Additionally, Plaintiff argues that Defendant Shepard's stated reason for having him transferred, that he "declared war" on the JSP Staff, is "absolutely false." (Id. at 7). Plaintiff also claims that because Defendants "have presented no evidence to support their claim that Plaintiff threatened staff, an inference can be drawn that Defendant Shepard requested Plaintiff be transferred from [JSP] because [he] filed grievances against him and his co-workers." (Id.).

According to Defendants, GDOC inmates are classified into one of six security levels: Trustee, Minimum, Medium, Close, Maximum, and High Maximum. (Doc. no. 50, p. 8, and Shepard Aff. ¶ 6, Ex. B). Plaintiff's security level was raised on March 13, 2007, from medium to close. (Doc. no. 50, p. 8 and Shepard Aff. ¶ 6, Ex. B). However, Defendants maintain that Defendants Lawrence, Linder, and Soles did not participate, in any way, in the process that resulted in Plaintiff's transfer from JSP, nor in the raising of Plaintiff's security level. (Id. at Lawrence Aff. ¶ 13, Soles Aff. ¶ 8, Linder Aff. ¶ 6). Furthermore they maintain that these three Defendants never retaliated against Plaintiff for any reason. (Id. at Lawrence Aff. ¶¶ 12, 14, Soles Aff. ¶¶ 8, 9, Linder Aff. ¶ 6).

Concerning Plaintiff's allegation that Defendant Shepard failed to review certain

8

informal grievances he had filed, as provided in note 4 *supra*, the record shows that while at JSP, Plaintiff filed two informal grievances. On March 1, 2007, Plaintiff complained that Defendant Lawrence retaliated against him by writing a DR, and on March 9, 2007, Plaintiff submitted an informal grievance in which he complained that the staff was denying property to inmates in protective custody.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate only if "there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Applicable substantive law identifies which facts are material in a given case.[6] Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

When seeking summary judgment, the movant must show, by reference to materials on file, that there are no genuine issues of material fact to be decided at a trial. Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991). If the burden of proof at trial rests with the movant, to prevail at the summary judgment stage, the movant must show that, "on all the essential elements of its case . . . , no reasonable jury could find for the nonmoving party." United States v. Four Parcels of Real Prop., 941 F.2d 1428, 1438 (11th Cir. 1991) (*en banc*). On the other hand, if the non-moving party has the burden of proof at trial, the movant may prevail at the summary judgment stage either by negating an essential element of the non-moving party's claim or by pointing to specific portions of the record that

---

[6]The Court is mindful that for purposes of summary judgment, only disputes about material facts are important. That is, "[t]he mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case." McCormick v. City of Fort Lauderdale, 333 F.3d 1234, 1244 (11th Cir. 2003) (citation omitted).

9

demonstrate the non-moving party's inability to meet its burden of proof at trial. Clark, 929 F.2d at 606-08 (explaining Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970) and Celotex Corp. v. Catrett, 477 U.S. 317 (1986)). Merely stating that the non-moving party cannot meet its burden at trial is not sufficient. Id. at 608. Evidence presented by the movant is viewed in the light most favorable to the non-moving party. Adickes, 398 U.S. at 157.

If the moving party carries the initial burden, then the burden shifts to the non-moving party "to demonstrate that there is indeed a material issue of fact that precludes summary judgment." Clark, 929 F.2d at 608. The non-moving party cannot carry its burden by relying on the pleadings or by repeating conclusory allegations contained in the complaint. Morris v. Ross, 663 F.2d 1032, 1034 (11th Cir. 1981). Rather, the non-moving party must respond either by affidavits or as otherwise provided in Fed. R. Civ. P. 56. "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson, 477 U.S. at 255 (quoting Adickes, 398 U.S. at 158-59). A genuine issue of material fact is said to exist "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. at 248.

### III. DISCUSSION

Plaintiff contends that Defendants Lawrence, Linder, and Soles found Plaintiff guilty on his DR in retaliation for his filing grievances concerning the conditions of confinement at JSP. Additionally, Plaintiff maintains that Defendant Shepard had Plaintiff transferred from JSP to TSP and raised his security classification from medium to close in retaliation for Plaintiff filing grievances. Plaintiff argues that Defendants' stated reasons for giving him the DR and transferring him out of JSP are pretextual. (Doc. no. 54). Defendants assert that

they are entitled to summary judgment on Plaintiff's retaliation claims because, among other things, his claims fail on the merits and they are protected by qualified immunity. (Doc. no. 50, pp. 10-18).

A. **Plaintiff's Retaliation Claims**

The First Amendment prohibits prison officials from retaliating against inmates for filing lawsuits or administrative grievances, or for exercising the right of free speech. Farrow v. West, 320 F.3d 1235, 1248 (11th Cir. 2003); Wright v. Newsome, 795 F.2d 964, 968 (11th Cir. 1986). Nor may prison officials burden an inmate's First Amendment rights "with practices that are not reasonably related to legitimate penological objectives" or "act with the intent of chilling that First Amendment right." Harris v. Ostrout, 65 F.3d 912, 916 (11th Cir. 1995) (*per curiam*) (discussing alleged violation of First Amendment right of access to the courts) (citations omitted). Where a plaintiff has failed to establish a causal connection between his protected conduct and the alleged retaliatory action, summary judgment for the defendant is proper. Farrow, 320 F.3d at 1248-49. Stated another way, "A prisoner can establish retaliation by demonstrating that the prison official's actions were 'the result of his having filed a grievance concerning the conditions of his imprisonment.'" Id. at 1248 (citing Wildberger v. Bracknell, 869 F.2d 1467, 1468 (11th Cir. 1989)). The Eleventh Circuit has ruled that "[d]irect evidence of an illegal motive will usually suffice to create a genuine issue of fact and preclude summary judgment." Harris, 65 F.3d at 917.[7]

---

[7]In Harris, the Eleventh Circuit reversed the district court's decision granting summary judgment where the prisoner plaintiff submitted corroborating affidavits from fellow prisoners that stated a prison official commented that he filed disciplinary reports against the plaintiff, at least in part, in retaliation for prior litigation. Harris, 65 F.3d at 917.

11

### 1. Claims Against Defendants Lawrence, Linder, and Soles

Plaintiff contends that his DR No. 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 was given in retaliation for his filing grievances concerning the conditions of confinement at JSP. (Doc. no. 13). Defendants Lawrence, Linder, and Soles assert that they have not retaliated against Plaintiff for filing grievances or for any other reason. (Doc. no. 50, Lawrence Aff. ¶ 13, Soles Aff. ¶ 9, Linder Aff. ¶ 6). Indeed, the record reflects that Plaintiff received his DR prior to his filing any informal grievance at JSP. Defendant Lawrence instructed Defendant Linder to write Plaintiff a DR on February 16, 2007. (Id., Lawrence Aff. ¶ 9). Plaintiff did not file his first informal grievance until March 1, 2007. (Id., Morgan Aff. ¶ 7). Thus, the DR could not have been given in retaliation for Plaintiff filing grievances. To the extent Plaintiff claims he wrote other informal grievances that were not reviewed by Defendant Shepard, his allegation is unavailing. First, Plaintiff's allegations are conclusory. Second, and more importantly, Plaintiff offers no evidence of any "un-reviewed" informal grievance. Thus, this conclusory allegation is insufficient to raise a material question of fact.

Additionally, Plaintiff argues that Defendants' reason for giving him a DR, that he failed to provide additional information thus he refused to follow Defendant Lawrence's instructions, is false. Plaintiff claims that the DR establishes that the reason he was given the DR was because he refused to come off of protective custody status. However, the DR clearly states that the reason for his DR was that on February 16, 2007, Plaintiff "was instructed by [Defendant] Lawrence . . . that he needed to come off protective custody status because his reasons for being on protective custody [were] not valid . . . [and Plaintiff] refused the instructions given to him." (Id., Linder Aff. Ex. A). Furthermore, the summary

of the investigation reveals that based on Plaintiff's refusal to cooperate with the investigation, a hearing was recommended. (Id.). Thus, there is no reason to suppose that the DR was given for any reason other than Defendants' stated reason. In any event, as noted above, the DR was given prior to Plaintiff filing any informal grievance concerning his conditions of confinement at JSP.

Similarly, Plaintiff's claim for retaliation against Defendant Soles also fails. The disciplinary hearing for DR No. 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, was held on February 21, 2007, a date prior to Plaintiff submitting his first informal grievance. (Id., Soles Aff. ¶ 4). Furthermore, Defendant Soles has shown that she did not have any discussions concerning Plaintiff with any other Defendant - or anyone else - prior to the disciplinary hearing. (Id. ¶ 5). Here again, Plaintiff's self-serving, unsupported statement that Defendant Soles purportedly stated, "They want you guilty so I'm not gonna go against my boss, no matter what that [standard operating procedure] says," is insufficient to create a material issue of fact. Additionally, Plaintiff has not provided any evidence or shown that Defendant Soles did not comply with SOP IIB02-0001. Therefore, as Plaintiff did not file any grievances at JSP until after the disciplinary hearing had concluded, Plaintiff's claims for retaliation against Defendants Lawrence, Linder, and Soles fail, and these Defendants are entitled to summary judgment.[8]

### 2. Claims Against Defendant Shepard

The Court turns next to Plaintiff's claims against Defendant Shepard. Plaintiff claims that Defendant Shepard transferred Plaintiff and raised his security classification in

---

[8]The Court's conclusion in this regard pretermits consideration of Defendants' remaining arguments concerning Defendants Lawrence, Linder, and Soles.

retaliation for his filing grievances. On March 8, 2007, Defendant Shepard requested that Plaintiff be transferred from JSP. Defendant Shepard maintains that he requested the transfer because he deemed Plaintiff to be a potential threat to the staff and the safety of the staff. According to Defendant Shepard, Plaintiff wrote a letter in which he "declared war" on the JSP staff. Defendant Shepard maintains that he requested the transfer based on Plaintiff's "declaration of war" only, and that the grievances played no role in his determination concerning Plaintiff's transfer. Indeed, the GDOC "Query Transfer Request" form provides that Defendant Shepard's stated reason for transferring Plaintiff was that Plaintiff "issued a declaration of war" against JSP. (Id., Shepard Aff. Ex. A). Concerning Plaintiff's claim that Defendant Shepard raised his security classification, Defendant Shepard maintains that he played no role in the determination concerning Plaintiff's security classification. Rather, the Office of Inmate Classification raised Plaintiff's classification.

Plaintiff asserts that he "NEVER" threatened or "declared war" on the JSP staff, and but for Defendant Shepard's false statement that Plaintiff "declared war" on the JSP staff, Plaintiff's security classification would not have been raised. (Sumrall Aff. ¶ 15). Plaintiff indicates that the higher classification has subjected him to a more harsh and restrictive environment at TSP. (Id.). He is also unable to participate in programs that would help his chances of obtaining parole and achieving marketable skills.

An issue of fact exists concerning Defendant Shepard and whether he recommended that Plaintiff be transferred from JSP because Plaintiff "declared war" on the staff at JSP, as claimed by Defendant Shepard, or recommended transferring Plaintiff from JSP because Plaintiff had filed grievances, as claimed by Plaintiff. In this case, the record is clear that

Plaintiff had filed at least one informal grievance prior to Defendant Shepard recommending his transfer. Plaintiff also alleges that Defendant Shepard should have been aware that Plaintiff had filed informal grievances because as the Warden of Care and Treatment he was required to review the informal grievances.[9] As Defendants have not provided the purported letter or documentation showing Plaintiff's statement wherein he "declared war" on the staff at JSP, the information about Defendant Shepard's motivation to request Plaintiff's transfer is Defendant Shepard's statement in his affidavit and his statement on the "Query Transfer Request" form. Notably, however, Plaintiff also provided an affidavit in which he avers he did not threaten the JSP staff. Additionally, Plaintiff alleged that Defendant Shepard, as Warden of Care and Treatment, should have been familiar with Plaintiff's grievances concerning the conditions of confinement at JSP. Therefore, Plaintiff has sufficiently created a dispute concerning a material question of fact as to whether he declared war on the staff at JSP.

Additionally, concerning Defendant Shepard, the record in this case establishes that the final decision to transfer Plaintiff to TSP, a higher security level prison, was made by the Office of Inmate Classification, and not by Defendant Shepard. However, as noted by Plaintiff, the basis for Defendant Shepard's stated reason to transfer Plaintiff was that he had "declared war" on the JSP staff. This allegation resulted in Plaintiff being transferred to a prison with a higher security classification. Therefore, even though the Office of Inmate

---

[9] As previously noted, Plaintiff's allegation that Defendant Shepard received but did not process other informal grievances is unavailing as there is no evidence in the record of any purported "un-reviewed" informal grievance. The record clearly shows that Plaintiff while at JSP only filed two informal grievances.

15

Classification was responsible for his elevated security status, the Office of Inmate Classification relied on Defendant Shepard's stated purpose for requesting Plaintiff's transfer. Therefore, Plaintiff has sufficiently created a material question of fact regarding the basis for Defendant Shepard's recommendation that Plaintiff be transferred from JSP.

### B. Qualified Immunity

As the Court has recommended that summary judgment should be entered for Defendants Lawrence, Linder, and Soles on the retaliation claims asserted against them, the Court will only address Defendant Shepard's claim for qualified immunity. Defendant Shepard contends that, even if he is not entitled to summary judgment on the merits of Plaintiff's claims, he, nonetheless, is entitled to qualified immunity. (Doc. no. 50, pp. 16-18).

State officials, such as Defendant Shepard, acting within their discretionary authority are entitled to immunity from suit unless their actions violate a "clearly established" right "of which a reasonable person would have known." Powell v. Georgia Dep't of Corr., 114 F.3d 1074, 1077 (11th Cir. 1997) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). Stated another way, "[a] right is clearly established if, in light of already-existing law, the unlawfulness of the conduct is apparent, and if a constitutional rule applies with obvious clarity to give an official fair warning that violating that right is actionable." Bennett v. Hendrix, 423 F.3d 1247, 1255 (11th Cir. 2005) (internal citations and quotations omitted). "If reasonable public officials could differ on the lawfulness of a defendant's actions, the defendant is entitled to qualified immunity." Storck v. City of Coral Springs, 354 F.3d 1307, 1314 (11th Cir. 2003). Also, the Eleventh Circuit has held: "In this circuit, the law can be

'clearly established' for qualified immunity purposes only by decision of the U.S. Supreme Court, Eleventh Circuit Court of Appeals, or the highest court of the state where the case arose." Jenkins by Hall v. Talladega City Bd. of Educ., 115 F.3d 821, 826 n.4 (11th Cir. 1997).

In this case, Defendant Shepard claims he is entitled to qualified immunity because Plaintiff has not shown that Defendant Shepard committed any constitutional violations or violated "clearly established law." (Doc. no. 50, p. 17). Defendant Shepard contends that, at best, Plaintiff "may have shown that [Defendant Shepard] had a mixed motive in all of [his] alleged retaliatory acts." (Id.).

Under the First Amendment, prison officials may not retaliate against inmates for filing lawsuits or administrative grievances. Bennett v. Hendrix, 423 F.3d 1247 (11th Cir. 2005) (finding plaintiff suffers adverse action if the defendant's allegedly retaliatory conduct would likely deter a person of ordinary firmness from exercise of First Amendment rights); Farrow, 320 F.3d at 1248 (concluding that prison officials may not retaliate against inmates for filing lawsuits or administrative grievances); Wright, 795 F.2d at 968 (finding cognizable § 1983 claim where person alleges the actions of prison officials "that might not otherwise be offensive to the Constitution" may be brought "within the scope of the Constitution by alleging that the actions were taken in retaliation for filing lawsuits and administrative grievances).

Viewing Plaintiff's allegations and all reasonable inferences in a light most favorable to Plaintiff, the non-movant, the Court disagrees with Defendant's argument that he is entitled to qualified immunity. Here, Plaintiff alleged that Defendant Shepard recommended

17

transferring Plaintiff from JSP because Plaintiff exercised his First Amendment right in filing grievances. Thus, Plaintiff has claimed that Defendant Shepard violated a "clearly established" right "of which a reasonable person would have known." Therefore, Defendant Shepard is not entitled to qualified immunity.

The Court notes that Defendant Shepard relies on Barthlow v. Jett, 303 Fed. App'x 723 (11th Cir. 2008), for the proposition that "[a] government actor is entitled to qualified immunity from an action alleging retaliatory firing for protected speech if he can show that he would have taken the same action in the absence of the speech." Id. at 724. Barthlow, however, is distinguishable from the case *sub judice*. In Barthlow, the court also noted, "A state actor is entitled to qualified immunity for firing an employee when motivated in part by unlawful considerations if lawful reasons were also presented." Id. (citations ommited). Here, a question of fact remains concerning Defendant Shepard's lawful reason for recommending that Plaintiff be transferred from JSP. Indeed, the only evidence concerning Defendant Shepard's motivation to have Plaintiff transferred are Defendant Shepard's statements. However, as previously noted, Plaintiff avers in his affidavit, that he never made any such declaration. Therefore, it is not clear whether this is a case of mixed motives, and thus, this case is distinguishable from Barthlow. Therefore, Defendant Shepard is not entitled to qualified immunity.

### C.     Claims for Damages

Finally, Defendants argue that to the extent Plaintiff seeks damages for mental or emotion injury suffered, his request fails. (Doc. no. 50, pp. 18-19). When a lawsuit involves (1) a federal civil action (2) brought by a prisoner (3) for mental or emotional injury (4)

suffered while in custody, § 1997e(e) requires a showing of more than *de minimis* physical injury in order for the plaintiff to proceed. Mitchell v. Brown & Williamson Tobacco Corp., 294 F.3d 1309, 1312-13 (11th Cir. 2002). In this case, Plaintiff does not contend that he suffered any physical injury resulting from any alleged constitutional violation. Consequently, Plaintiff has failed to allege facts sufficient to satisfy the mandates established by § 1997e(e). Therefore, any request for compensation for mental or emotional is barred by 42 U.S.C. § 1997e(e). Therefore, Defendants are entitled to summary judgment on Plaintiff's request for mental or emotional damages.

## IV. CONCLUSION

For the reasons stated above, the Court **REPORTS** and **RECOMMENDS** that Defendants' motion for summary judgment be **GRANTED IN PART** and **DENIED IN PART**, that a final judgment be **ENTERED** in favor of Defendants Lawrence, Linder and Soles, and that Plaintiff's claim of retaliation against Defendant Shepard proceed to trial.

SO REPORTED and RECOMMENDED this 30th day of November, 2009, at Augusta, Georgia.

W. LEON BARFIELD
UNITED STATES MAGISTRATE JUDGE